**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                 PLAINTIFF

v.                                              No. 4:10CR00034 JLH

JOHN MILLS                                                                                                        DEFENDANT

**OPINION**

John Mills pled guilty to one count of defrauding U.S. Bank by participating in a check-kiting scheme involving the deposits of Affiliated Foods Southwest, Inc., and two of its subsidiaries into U.S. Bank accounts, in violation of 18 U.S.C. §§ 1344 and 2.  The issue before the Court is whether Mills is subject to the two-level enhancement provided in U.S. Sentencing Guidelines Manual Section 3B1.3 for abuse of position of trust or use of special skill.

Mills was President and Chairman of the Board of Affiliated Foods Southwest, which had a line of credit with U.S. Bank as lead lender and three other participating banks in the amount of $50 million in addition to a $20 million note receivable line.  In September 2008, Affiliated Foods Southwest was experiencing cash flow difficulties.  The Chief Financial Officer of Affiliated Foods Southwest approached Mills and suggested that checks be issued to Affiliated Foods Southwest by related corporations and deposited into Affiliated Foods Southwest's account at U.S. Bank.  Mills approved the plan.  He and the Chief Financial Officer then reviewed daily reports and discussed amounts needed to cover anticipated cash shortages.  Mills kept track of the daily amount needed to cover the cash shortage that Affiliated Foods Southwest would incur, and the Chief Financial Officer would instruct an employee to contact accountants for the two related companies to request them to prepare checks made payable to Affiliated Foods Southwest even though Mills and the Chief Financial Officer knew that the two affiliated companies did not have sufficient funds in their

accounts to cover the checks. The checks were deposited before 2:00 p.m. so that Affiliated Foods Southwest could obtain same day credit. On a daily basis, U.S. Bank withdrew the funds deposited into the Affiliated Foods Southwest account and used those funds to reduce the outstanding balance on Affiliated Foods Southwest's line of credit. Mills and the Chief Financial Officer generated sales and income tax reports that did not accurately reflect Affiliated Foods Southwest's trial balance. Those sales and income reports were presented to the board of directors for Affiliated Foods Southwest and used to create quarterly financial statements. As a result of the check-kiting scheme, U.S. Bank suffered a loss of $4,081,115.03.

Section 3B1.3 of the U.S. Sentencing Guidelines Manual provides in pertinent part, "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." Application Note 1 defines "Public or Private Trust" as follows:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or a theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

The phrase "position of public or private trust," as used in the United States Sentencing Guidelines, "is a term of art, appropriating some of the aspects of the legal concept of a trustee or

fiduciary." *United States v. Hayes*, 574 F.3d 460, 479 (8th Cir. 2009) (quoting *United States v. Garrison*, 133 F.3d 831, 839 n.18 (11th Cir. 1998) (quoting *United States v. Ragland*, 72 F.3d 500, 502-03 (6th Cir. 1996))).  "A position of public or private trust is characterized by professional or managerial discretion, and the abuse of trust enhancement applies where the offender has abused discretionary authority entrusted to the defendant *by the victim*." *United States v. Fazio*, 487 F.3d 646, 659 (8th Cir. 2007) (emphasis added).  That the position of trust ordinarily will involve trust reposed in the defendant by the victim is consistent with the examples in the application notes to Section 3B1.3—an attorney serving as a guardian and embezzling the clients' funds, a bank executive who engages in a fraudulent loan scheme, a physician who sexually abuses a patient under the guise of an examination, a postal service worker to whom mail is entrusted, a hospital orderly who obtains and misuses information from a patient chart, a volunteer at a charitable organization who misuses donor information, an investment banker who defrauds an investor, a person who falsely represents himself as a physician to a patient or employer, a fiduciary who embezzles from an employee benefit plan, and an officer of a labor union who embezzles from the union.  The only example in the application notes that arguably may not involve a position of trust *vis-a-vis* the victim is in Application Note 2(B)(i)—an employee of a state motor vehicle department who knowingly issues a driver's license based on false, incomplete, or misleading information.  In that example the trust is a public trust, not a private trust, and the crime may not involve an identifiable victim.  With that exception, every example in the application notes involves trust reposed in the defendant by the victim.

The facts here do not show that Mills had a position of trust *vis-a-vis* the victim of the offense, U.S. Bank.  He held a position of trust with Affiliated Foods Southwest, and he owed a

fiduciary duty to that company, its board of directors, and its shareholders.  With respect to U.S. Bank, however, he was simply the agent for a customer who was both a borrower and a depositor.  When a customer of a bank borrows money from the bank, makes deposits into the bank, or writes checks drawn on the bank account, those transactions are simply arm's-length commercial transactions and, usually, do not involve a position of trust between the bank and its customer. *United States v. Jolly*, 102 F.3d 46, 48 (2nd Cir. 1996).  While, as noted, Mills held a position of trust with respect to Affiliated Foods Southwest, its board of directors, and its shareholders, and while he abused that trust, his abuse of that trust does not support imposition of the two-level enhancement under Section 3B1.3.  "In order for the abuse of a position of trust enhancement to be applied to a defendant, the evidence must show that the *defendant's position with the victim of the offense* significantly facilitated the commission of the offense."  *United States v. Moored*, 997 F.2d 139, 145 (6th Cir. 1993) (emphasis added).  For the crime charged in this case, the victim of the offense was U.S. Bank, not the shareholders of Affiliated Foods Southwest.  Mills held no position of trust with respect to U.S. Bank.

For its argument that Section 3B1.3 applies, the government relies primarily on *United States v. Waldner*, 580 F.3d 699 (8th Cir. 2009).  There, the CEO and owner of a debtor made false statements under oath at a section 341 creditors' meeting during a bankruptcy proceeding.  In that case, the court acknowledged that an arm's-length commercial transaction ordinarily does not suffice for the enhancement under Section 3B1.3 to apply but held that the debtor's oath of truthfulness in a section 341 meeting placed the defendant in a position of trust *vis-a-vis* the creditors.  *Id*. at 707.  The evidence here shows no factual basis for concluding that a special position of trust existed between Mills and U.S. Bank such as existed in *Waldner*.

Although it is undoubtedly true that U.S. Bank placed some trust in Mills, that fact does not justify application of Section 3B1.3.  As the Sixth Circuit explained in *Jolly*:

> Section 3B1.1 precludes an enhancement where the abuse of trust is included in the specific offense characteristic.  Where fraud occurs in arm's-length transactions not involving fiduciary-like relationships, the "trust" that is "abused" is simply the reliance of the victim on the misleading statements or conduct of the defendant.  The trust in short is a specific offense characteristic of fraud, and a Section 3B1.3 enhancement is inappropriate.  In the instant matter, the lenders' trust in Jolly was simply their reliance on his representations about Microtech's ongoing business and the appearance created by the repayments.  Such reliance is the hope of every defendant who engages in fraud.

*Jolly*, 102 F.3d at 49.  This analysis applies equally here.  *Cf. United States v. Pardo*, 25 F.3d 1187 (3rd Cir. 1994).

Because Mills was not in a position of trust *vis-a-vis* the victim, U.S. Bank, the two-level enhancement in Section 3B1.3 does not apply.

DATED this 26th day of October, 2010.

                                                                                  /s/ J. Leon Holmes
                                                                                  _____
                                                                                  J. LEON HOLMES
                                                                                  UNITED STATES DISTRICT JUDGE